1   TODD M. LANDER – Bar No. 173031
    TALIN KESHISHIAN – Bar No. 201830
2   EZRA BRUTZKUS GUBNER LLP
    21650 Oxnard Street, Suite 500
3   Woodland Hills, CA 91367
    Telephone: 818.827.9000
4   Facsimile: 818.827.9099
    Email:    tlander@ebg-law.com
5              tkeshishian@ebg-law.com

6   Attorneys for Plaintiff, Twinpeak Industries, Inc. dba Jungle Jumps

7

8                  **UNITED STATES DISTRICT COURT**

9                  **CENTRAL DISTRICT OF CALIFORNIA**

10

11  TWINPEAK INDUSTRIES, INC. dba          Case No.
    JUNGLE JUMPS,
12
                                            **CV09-7085 AHM (SSx)**
13                    Plaintiff,
                                            **COMPLAINT FOR:**
14  v.
                                            **1. BREACH OF WRITTEN**
15                                          **   CONTRACT;**
    CAPTAIN BOUNCE, INC.; and               **2. BREACH OF IMPLIED**
16  STEVE MEKERI, an individual,            **   LICENSING AGREEMENT;**
                                            **3. FALSE DESIGNATION OF**
17                    Defendants.           **   ORIGIN;**
                                            **4. TRADE DRESS INFRINGEMENT;**
18                                          **5. FALSE ADVERTISING; AND**
                                            **6. UNFAIR BUSINESS PRACTICES.**
19
                                            **DEMAND FOR JURY TRIAL**
20

21          Plaintiff Twin Peak Industries, Inc. dba, Jungle Jumps ("Jungle Jumps" or

22  "Plaintiff") alleges that:

23

24          1.      Jungle Jumps is a well known company engaged in the business of

25  designing, manufacturing, distributing and selling jumpers, bouncers and other

26  inflatables (referred to herein as Jungle Jumps' Inflatables") to consumers. Jungle

27  Jumps' unique designs, colors, patterns and motifs used on its jumpers, bouncers,

28  and inflatables, contain among other things, palm trees with monkeys, and unique

    and distinct castles and sport motif designs (referred to herein as "Jungle Jumps'

COPY

Marks") recognized among distributors, manufacturers and consumers. Jungle Jumps is the owner of a trademark comprised of the unique designs of the Jungle Jumps Inflatables that it manufactures and distributes, the Jungle Jumps' Marks. Jungle Jumps is also the owner of the attendant trade dress encompassed within or associated with the Jungle Jumps' Inflatables. Jungle Jumps' Inflatables have been manufactured and distributed by Jungle Jumps for the last five years.

2.    Jungle Jumps is informed and believes, and on that basis alleges, that defendant Captain Bounce, Inc. ("Captain Bounce") is likewise a distributor of various inflatables, and more recently a manufacturer of inflatables organized and existing under the laws of the state of California and maintaining a principal place of business in San Fernando, California.

3.    Jungle Jumps is informed and believes, and on that basis alleges, that defendant Steve Mekeri ("Mekeri") is an individual residing in Los Angeles County and is the principal and/or owner of Captain Bounce. Jungle Jumps is further informed and believes, and on that basis alleges, that all or much of the conduct Captain Bounce engaged in and which is complained of below was taken as a result of decisions or directives undertaken by Mekeri. In that regard, Jungle Jumps is additionally informed and believes that Mekeri's control of Captain Bounce, financially and otherwise, is such that there is no separate legal existence between Mekeri and Captain Bounce in law and fact, and that Mekeri and Captain Bounce are, as a result, alter egos of the other as a matter of law. Captain Bounce and Mekeri are occasionally referred to in this Complaint collectively as "Defendants."

4.    At all time relevant to this dispute, the Defendants were the agents, servants and /or employees of one another and in doing the things herein mentioned and alleged was acting within the scope of such agency and /or employment.

-2-

**JURISDICTION AND VENUE**

5.    This court has original subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1338(a) and 15 U.S.C. § 1121 and as this action arises under The Federal Trademark Act ("The Lanham Act of 1946"), jurisdiction is conferred upon this Court by 28 U.S.C. Sec. 1338(b).  Further, this court has jurisdiction over the Jungle Jump's pendent claims pursuant to 28 U.S.C. § 1367.

6.    Venue is proper in the Central District of California in that Captain Bounce maintains its principal place of business in this District and otherwise transacts business affairs in the District.  In addition, the acts giving rise to the claim involves Captain Bounce's infringement of a trademark and/or trade dress that Jungle Jumps owns, by way of sales of infringing goods and/or other infringing conducting occurring entirely or primarily in this District.

7.    Personal jurisdiction exists over Captain Bounce because Captain Bounce maintains its principal place of business in the Los Angeles area, otherwise derives substantial revenue through activities in this State, and engages in a persistent course of conduct in this State.  The Court retains personal jurisdiction over Mekeri because he resides and works in this State.  Furthermore, the subject claim arises from Captain Bounce's and Mekeri's misconduct conduct within the State resulting in injury to Jungle Jumps in California.

**FACTS AND ALLEGATIONS COMMON TO ALL CLAIMS**

8.    Jungle Jumps designs, manufactures, distributes, and sells a variety of jumpers, bouncers, and other inflatables (referred to herein as "Jungle Jumps Inflatables").  Jungle Jumps' unique designs, colors, patterns, and motifs, containing among other things, palm trees with monkeys, and unique and distinct castles and sport motif designs, used on its jumpers, bouncers, and inflatables are recognized among distributors and other manufacturers and consumers.  These unique and recognized designs, colors, motifs of the Jungle Jumps' Inflatables that it manufactures and distributes constitutes a protectable trademark of Jungle Jumps

(referred to herein as "Jungle Jumps' Mark").  Jungle Jumps is also the owner of the attendant trade dress encompassed within or associated with the Jungle Jump's Inflatables ("Jungle Jumps' Trade Dress").   Jungle Jumps' Inflatables have acquired a distinction among Jungle Jumps' consumers and the public such that the consumer and public would identify the source of the inflatables from Jungle Jumps.

9.    The Jungle Jumps' Mark dates to five years ago when Jungle Jumps created identifiable designs, colors, patterns and motifs for its inflatables.  Jungle Jumps sales are almost entirely through the Internet, specifically their website www.junglejumps.com where pictures of the Jungle Jumps' Inflatables are clearly featured and displayed on various pages under specific categories.  Specifically, Jungle Jumps is known for their distinctive palm tree and monkey inflatables, as well as unique and distinct castles and sport motif bouncers.  Jungle Jumps' Inflatables are also featured and shown in various print advertisements, catalogues and product placement.  The Jungle Jumps' Inflatables are also featured on authorized distributors websites that sell or rent Jungle Jumps products.

10.    Beginning in April of 2008, Jungle Jumps began selling its product to Captain Bounce who was known strictly as a distributor and seller of inflatables.

11.    On or about May of 2009, Jungle Jumps began to suspect that Captain Bounce was manufacturing jumpers that imitate and look very similar, if not identical, to those unique inflatables manufactured exclusively by Jungle Jumps.

12.    Jungle Jumps formed this belief based, at least partly, on the following:

For the month of May 2009, Captain Bounce's web site "Specials" featured Jungle Jumps units exclusively and no others.  For the months of June and part of 2009, Captain Bounce's web site features "Specials" which displayed two of Jungle Jumps' bounce house inflatables.  Jungle Jumps also learned that in addition to its

website specials featuring the Jungle Jumps' units, Captain Bounce distributed at least 25,000 flyers featuring the Jungle Jumps units. For most inflatable companies, it is standard that the majority of sales come from those inflatables featured on their monthly "Specials" website page. Despite the running of these Specials on Captain Bounce's website for the months of May, June and July, and the additional flyers that were distributed, Captain Bounce placed an order of only two units from Jungle Jumps during this entire period. Captain Bounce's prior order history with Jungle Jumps differed significantly from the ordering pattern during the months of May, June and July.

13.    Based on the foregoing, Jungle Jumps notified Captain Bounce in writing on July 13, 2009 that it was discontinuing its business relationship with Captain Bounce. Jungle Jumps demanded that Captain Bounce remove all of Jungle Jumps' Inflatables from its website. Jungle Jumps has since learned that in fact Captain Bounce has began manufacturing inflatables at it facilities.

14.    Despite Jungle Jumps' written demand that Captain Bounce remove the Jungle Jumps' Inflatables from its website, to date specific Jungle Jumps' Inflatable models continue to be featured on the Captain Bounce website, including under the category of "Specials" where Package #1 features four units, all of which are Jungle Jumps units. The continued display of Jungle Jumps' Inflatables on Captain Bounce's website is unauthorized and a breach of the implied licensing agreement between Captain Bounce and Jungle Jumps. Specifically, the following Jungle Jumps' units identified by model numbers listed below are found featured on the Captain Bounce website:

Jumper Part identified as # 1173 to 1195; and Combos Part # 4138 to 4142.

15.    On or about July 28, 2009, counsel for Jungle Jumps demanded that Captain Bounce immediately remove all displays of the Jungle Jumps' Inflatables, as described above, from its website. Captain Bounce refused to comply and continues to display, advertise and feature Jungle Jumps' Inflatables on its website

without Jungle Jumps' consent. Logically, since Jungle Jumps no longer will distribute its products to Captain Bounce, Captain Bounce should not feature Jungle Jumps' Inflatables on its website, and would have no reason to except, as Jungle Jumps alleges, Captain Bounce is itself manufacturing Jungle Jumps' unique designs and selling same through its website where it features pictures of the exact Jungle Jumps' units that are part of the Jungle Jumps' Mark.

16.    Captain Bounce's reluctance to remove the images and admission to Jungle Jumps' counsel that it manufacturing "similar looking jumpers" confirmed that it is manufacturing the unique designs of Jungle Jumps' Inflatables for Captain Bounce and selling them to distributors and/or selling/renting directly to the public by advertising Jungle Jumps' Inflatables on its own website using the identical pictures of the Jungle Jumps' unit models as featured on Jungle Jumps own website.

17.    By agreeing to sell Defendant Jungle Jumps' products for distribution, Jungle Jumps impliedly licensed Defendant the right to use its trademark /trade dress for advertising and marketing Jungle Jumps' Inflatables, including featuring the Jungle Jumps' Inflatables model pictures displayed on the Captain Bounce website ("Implied Licensing Agreement"). When the business relationship terminated between Jungle Jumps and Captain Bounce as a result of Captain Bounces various breaches, Captain Bounce was no longer authorized or licensed to use, market, advertise for any purpose the Jungle Jumps' Inflatables, Jungle Jumps' Mark or Jungle Jumps' trade dress for any purpose. Defendant's continued advertising, displaying and marketing of Jungle Jumps' Inflatables is a breach of the Implied Licensing Agreement.

18.    In response to Jungle Jumps' demand that Captain Bounce remove the Jungle Jumps' Inflatables from its website, in early August 2009, Captain Bounce informed Jungle Jumps' counsel that because Captain Bounce still had a total of three Jungle Jumps' units remaining in its inventory that were ordered from Jungle

Jumps a few months earlier and that those items would continue to be featured under Specials category on Captain Bounce's website. Captain Bounce admitted that the remaining Jungle Jump's Inflatables continued to be featured on Captain Bounce's website were in fact not in stock or part of any pending orders with Jungle Jumps but that nevertheless they would be continued to be featured on the website because of the fact that Captain Bounce had distributed flyers featuring the units.

19.    Despite Jungle Jumps offering to pick up the three units remaining and give Captain Bounce credit towards its outstanding balance owing on past invoices, Captain Bounce refused, claiming it wanted to continue attempting to sell the units for retail.

20.    Jungle Jumps is believes that in fact none of the Jungle Jumps' inflatables that Captain Bounce purchased from Jungle Jumps remain in stock at Captain Bounce, but instead, Captain Bounce in an effort to conceal its manufacturing of Jungle Jumps' Inflatables and continuing displaying Jungle Jumps' Inflatables and Jungle Jumps Marks on the Captain Bounce website, is claiming it has the same three exact units in stock. Since June 2009 to present, the same three Jungle Jumps' Inflatable units have been featured under the Specials tab on the Captain Bounce website under the category of "Specials" Package #1. All units in package #1 are Jungle Jumps' Inflatables with the Jungle Jumps' Mark and Jungle Jumps' Trade Dress. Although the first item of package #1 is identified as CB Castle, in fact it is also a Jungle Jumps' Inflatable, with the yellow warning label, featured on all other Jungle Jumps' Inflatables, removed. The three remaining items of Package #1 are allegedly the three units that Captain Bounce has had in stock since earlier this year and has featured on its website Specials since June 2009.

21.    Refusal to discontinue infringement by continuing to display, feature and advertise Jungle Jumps' Mark on the Captain Bounce website.

-7-

22.    Between March and April of 2009, Captain Bounce placed several purchase order with Jungle Jumps for specific inflatables (referred to collectively as "Contracts").  Jungle Jumps manufactured the goods for Captain Bounce per the Contracts.  Jungle Jumps remains unpaid for the manufactured goods despite making numerous demands upon Captain Bounce for the payment of the outstanding balance for the following:

Invoice 10661; Purchase Order 12254 in the amount $2775.00
Invoice 10667; Purchase Order 11257 in the amount $1650.00
Invoice 10682; Purchase Order 11274 in the amount $825.00

The total outstanding balance due on the Contracts is $5,250.00. True and correct copies of the Contracts are attached hereto as Exhibit 1.

## FIRST CLAIM FOR RELIEF

### (Breach of Written Contract against All Defendants)

23.    Jungle Jumps reallages and restates, as though set forth in full, the allegations in paragraphs 1 through 22, above, inclusive.

24.    Plaintiff entered into binding written purchase orders (referred to collectively "Contract") with Defendant for specific inflatables.

25.    Plaintiff performed all its obligations under the Contract to be performed, except those for which it had been excused.

26.    Defendant breached the Contract by failing to pay the sums owing for the goods.

27.    Plaintiff has been damaged by Defendant's breach of the Contract.

28.    As a proximate result of Defendant's breach of the Contract, Plaintiff has suffered damages in the amount of $ 5,250.00.

/ / /

/ / /

/ / /

## SECOND CLAIM FOR RELIEF

(Breach of Implied Licensing Agreement Against All Defendants)

29.    Jungle Jumps realleges and restates, as though set forth in full, the allegations in paragraphs 1 through 28, above, inclusive.

30.    By agreeing to sell Defendant Jungle Jump's products for distribution, Jungle Jumps impliedly licensed Defendant the right to use its trademark /trade dress for advertising and marketing Jungle Jumps units, including featuring the Jungle Jump Inflatables model pictures displayed on the Captain Bounce website ("Implied Licensing Agreement"). When the business relationship terminated between Jungle Jumps and Captain Bounce as a result of Captain Bounces various breaches, Captain Bounce was no longer authorized or licensed to use Jungle Jumps' Inflatables, trademark or trade dress to advertise, market or use for any other purpose. Defendant's continued advertising, displaying and marketing of Jungle Jumps' Inflatables is a breach of the Implied Licensing Agreement.

## THIRD CLAIM FOR RELIEF

(False Designation of Origin Against All Defendants

15 U.S.C. § 1125(a) – Lanham Act §43(a))

31.    Jungle Jumps realleges and re-states, as though set forth in full, the allegations in paragraphs 1 through 30, above, inclusive.

32.    Jungle Jumps is, and at all relevant times was, the owner of all right, title and interest in and to the Jungle Jumps' Mark. Since early 2005 Jungle Jumps has been and still is the rightful manufacturer of Jungle Jumps' Inflatables and has had and still has the exclusive right to use, unless licensed to other distributors, the Jungle Jumps' Inflatables.

33.    Jungle Jumps' Mark signifies to consumers superior products of the highest quality all manufactured in USA versus the inferior inflatables imported from China. Jungle Jumps' Inflatables also provide one of the longest warranties in the industry and the use of only top quality 18.5 oz vinyl material in all of its

-9-

1   products. The Jungle Jumps' products are double and quadrupled stitched for extra

2   durability.

3       34.    As a consequence of Jungle Jumps' consistent and continuous use of

4   the throughout the United States, the consuming public and the trade have come to

5   recognize and identify Jungle Jumps' Mark and identify its source from Jungle

6   Jumps. Jungle Jumps derives substantial good will and value from this

7   identification.

8       35.    The Defendants have, as alleged above, sold and are continuing to

9   advertise on their website the specific identical Jungle Jumps' Inflatables models

10  and sell inflatable that are identical to Jungle Jumps' Mark. That conduct

11  constitutes the use of symbols or devices tending falsely to describe Defendants'

12  goods, within the meaning of 15 U.S.C. § 1125(a)(1), and is likely to cause

13  confusion, mistake, or deception by the public concerning the source of origin as

14  between Defendant's goods and those of Jungle Jumps, and/or to cause confusion,

15  mistake, or deception as to the affiliation, connection, association, origin,

16  sponsorship or approval of Defendants' goods with or by Jungle Jumps.

17      36.    Jungle Jumps is informed and believes, and on that basis alleges, that

18  on and after May of 2009, Captain Bounce sold and are continuing to advertise on

19  their website the specific identical Jungle Jumps' Inflatables models and sell

20  inflatable that are identical to Jungle Jumps' Mark. Defendants continued those

21  sales despite Jungle Jumps specifically advising them that this conduct infringed

22  upon Jungle Jumps' trademark rights in and to the Jungle Jumps' Mark.

23      37.    As a direct and proximate result of Defendants' infringing activities,

24  Jungle Jumps has suffered, and will continue to suffer until such activity is

25  enjoined by the Court, irreparable and inherently unquantifiable injury and harm to

26  its business, reputation, and consumer goodwill. Defendants' conduct has and will

27  also cause Jungle Jumps to lose sales which it would otherwise realize, unless and

28  until such activity is enjoined by the Court.

38.   Defendants' infringing activities are willful and conscious, and are likely to cause injury to Jungle Jumps and the public.  Jungle Jumps is entitled to recover its actual damages and/or to disgorge any profits Defendants' received through their infringing conduct, in addition to an award of costs and attorneys' fees under 15 U.S.C. §§ 1116 and 1117.  Jungle Jumps is further entitled to a trebling of any award of damages and/or profits, pursuant to 15 U.S.C. § 1117(a).  Jungle Jumps is additionally entitled to temporary, preliminary and/or permanent injunctive relief, a seizure of all infringing goods under 15 U.S.C. §1116(d), and the impoundment and destruction of all infringing goods pursuant to 15 U.S.C. § 1118.

## FOURTH CLAIM FOR RELIEF

(Trade Dress Infringement Against All Defendants

15 U.S.C. § 1125(a) – Lanham Act §43(a))

39.   Jungle Jumps realleges and re-states, as though set forth in full, the allegations in paragraphs 1 through 38, above, inclusive.

40.   Jungle Jumps is, and at all relevant times was, the owner of all right, title and interest in and to the Jungle Jumps Trade Dress.  Since early 2005, Jungle Jumps has been and still is the rightful manufacturer of Jungle Jumps products bearing the Jungle Jumps' Trade Dress, and has had and still has the exclusive right to use the Jungle Jumps' Trade Dress and to Jungle Jumps' Inflatables bearing that trade dress, except as licensed to authorized distributors.

41.   Jungle Jumps' Inflatables Trade Dress signifies to consumers that the inflatables that emanate from Jungle Jumps and are of the highest quality.  As a consequence of Jungle Jumps' consistent and continuous use of the Trade Dress throughout the United States, the consuming public and the trade have come to recognize and identify Jungle Jumps' Mark and identify its source from Jungle Jumps.  Jungle Jumps derives substantial good will and value from this identification.

/ / /

42.    The Defendants have, as alleged above, sold and are continuing to advertise on their website the specific identical Jungle Jumps' Inflatables models and sell inflatable that are identical to Jungle Jumps' Inflatables or confusingly similar to Plaintiff's Jungle Jumps' Trade Dress. That conduct constitutes the use of symbols or devices tending falsely to describe Defendants' goods, within the meaning of 15 U.S.C. § 1125(a)(1), and is likely to cause confusion, mistake, or deception by the public concerning the source of origin as between Defendant's goods and those of Jungle Jumps, and/or to cause confusion, mistake, or deception as to the affiliation, connection, association, origin, sponsorship or approval of Defendants' goods with or by Jungle Jumps.

43.    Jungle Jumps is informed and believes, and on that basis alleges, that on and after May of 2009, Captain Bounce sold and are continuing to advertise on their website the specific identical Jungle Jumps' Inflatable models and sell inflatable that are identical to Jungle Jumps' Inflatables. Defendants continued those sales despite Jungle Jumps specifically advising them that this conduct infringed upon Jungle Jumps' trademark rights in and to the Jungle Jumps Trade Dress.

44.    As a direct and proximate result of Defendants' infringing activities, Jungle Jumps has suffered, and will continue to suffer until such activity is enjoined by the Court, irreparable and inherently unquantifiable injury and harm to its business, reputation, and consumer goodwill. Defendants' conduct has and will also cause Jungle Jumps to lose sales which it would otherwise realize, unless and until such activity is enjoined by the Court.

45.    Defendants' infringing activities are willful and conscious, and are likely to cause injury to Jungle Jumps and the public. Jungle Jumps is entitled to recover its actual damages and/or to disgorge any profits Defendants' received through their infringing conduct, in addition to an award of costs and attorneys' fees under 15 U.S.C. §§ 1116 and 1117. Jungle Jumps is further entitled to a trebling of

1  any award of damages and/or profits, pursuant to 15 U.S.C. § 1117(a).   Jungle

2  Jumps is additionally entitled to temporary, preliminary and/or permanent injunctive

3  relief, a seizure of all infringing goods under 15 U.S.C. §1116(d), and the

4  impoundment and destruction of all infringing goods pursuant to 15 U.S.C. § 1118.

**FIFTH CLAIM FOR RELIEF**

(False Advertising Against All Defendants

15 U.S.C. § 1125(a)(1)(B) – Lanham Act §43(a))

8      46.    Jungle Jumps realleges and re-states, as though set forth in full, the

9  allegations in paragraphs 1 through 45, above, inclusive.

10      47.    Defendants' conduct as alleged above, and specifically their

11  unauthorized use of the Jungle Jumps Mark and the Jungle Jumps' Trade Dress in

12  marketing and promoting their infringing goods and soliciting orders for those

13  goods on their website, by displaying the identical Jungle Jump inflatable models,

14  as seen on the Jungle Jumps' website, constitutes false and misleading advertising

15  or representations of facts concerning the nature, characteristics, or qualities of

16  their goods.  That false and misleading advertising is likely to cause and is causing

17  deception in the marketplace, and is likely to and is influencing consumer

18  purchasing decisions, and specifically decisions relating to the purchase of Jungle

19  Jumps' goods or Defendants' infringing goods.

20      48.    Defendants' conduct constitutes false advertising, in contravention of

21  15 U.S.C. § 1125(a)(1)(B).  Defendants have engaged in this false advertising

22  willfully and consciously, and in the face of Jungle Jumps' request that they cease

23  and desist.

24      49.    As a direct and proximate result of Defendants' false and misleading

25  advertising, Jungle Jumps is likely to be and has been injured by direct diversion of

26  sales from Jungle Jumps to Defendants and by a decline in the goodwill Jungle

27  Jumps' products presently enjoy with the public.

28  / / /

50.    As a further direct and proximate result of Defendants' misconduct, Jungle Jumps has suffered, and will continue to suffer until such activity is enjoined by the Court, irreparable and inherently unquantifiable injury and harm to its business, reputation, and consumer goodwill.  Defendants' conduct has and will also cause Jungle Jumps to lose sales which it would otherwise realize, unless and until such activity is enjoined by the Court.

51.    Defendants' false advertising was willful and conscious, and is likely to cause injury to Jungle Jumps and the public.  Jungle Jumps is entitled to recover its actual damages and/or to disgorge any profits Defendants' received through their infringing conduct, in addition to an award of costs and attorneys' fees under 15 U.S.C. §§ 1116 and 1117.  Jungle Jumps is further entitled to a trebling of any award of damages and/or profits, pursuant to 15 U.S.C. § 1117(a).  Jungle Jumps is additionally entitled to temporary, preliminary and/or permanent injunctive relief, a seizure of all infringing goods under 15 U.S.C. §1116(d), and the impound and destruction of all infringing goods pursuant to 15 U.S.C. § 1118.

## SIXTH CLAIM FOR RELIEF

(Unfair Competition Under California Law

California Business & Professions Code § 17200, *et seq.*)

52.    Jungle Jumps realleges and re-states, as though set forth in full, the allegations in paragraphs 1 through 51, inclusive.

53.    Jungle Jumps is the owner of the Jungle Jumps Mark and the Jungle Jumps Trade Dress.  Defendants' infringement of the Jungle Jumps' Mark , and Jungle Jumps' Trade Dress, and their false advertising, all as alleged above, constitute unfair and/or fraudulent business practices and/or false and untrue advertising within the meaning of California Business and Professions Code § 17200, *et seq.*

54.    As a consequence of Defendants' conduct, which was willful and conscious, Jungle Jumps is entitled to injunctive relief and/or an order disgorging

Defendants' profits derived from the manufacture, use, display or sale of goods infringing upon Jungle Jumps' rights in and to the Jungle Jumps' Mark and the Jungle Jumps' Trade Dress.

WHEREFORE, Jungle Jumps prays for:

### As To the First Claim for Relief

1.   For damages in an amount to be proved prior to judgment;

2.   Such further relief as this Court deems just and appropriate.

### As for the Second Claim for Relief

3.   For damages in an amount to be proved prior to judgment;

4.   Such further relief as this Court deems just and appropriate.

### As To the Third Claim For Relief

5.   Temporary, Preliminary and Permanent Injunctive Relief, prohibiting Defendants from: (a) using the Jungle Jumps Mark and the Jungle Jumps Trade Dress (2) using any other mark in commerce that is confusingly similar to the Jungle Jumps' Mark or Jungle Jumps Trade Dress (3) engaging in any conduct that is likely to cause confusion, mistake, deception or public misunderstanding as to the origin of Defendants' products and/or their connectedness to Jungle Jumps;

6.   A seizure order under 15 U.S.C. § 1116(d);

7.   An order impounding and destroying all infringing goods, under 15 U.S.C. § 1118;

8.   Restitution and Disgorgement of any profits Defendants generated through the sales of their infringing goods;

9.   Treble damages under 15 U.S.C. § 1117(a);

10.   Actual damages, according to proof at trial;

11.   The costs of suit incurred, under 15 U.S.C. § 1116;

12.   Reasonable attorneys' fees, under 15 U.S.C. § 1117(a); and

13.   Such further relief as this Court deems just and appropriate;

### As To the Fourth Claim For Relief

14.    Temporary, Preliminary and Permanent Injunctive Relief, prohibiting Defendants from: (a) using the Jungle Jumps' Trade Dress in commerce; (2) using any other trade dress in commerce that is confusingly similar to the Jungle Jumps' Trade Dress; and/or (3) engaging in any conduct that is likely to confusion, mistake, deception or public misunderstanding as to the origin of Defendants' products and/or their connectedness to Jungle Jumps;

15.    A seizure order under 15 U.S.C. § 1116(d);

16.    An order impounding and destroying all infringing goods, under 15 U.S.C. § 1118;

17.    Restitution and Disgorgement of any profits Defendants generated through the sales of their infringing goods;

18.    Treble damages under 15 U.S.C. § 1117(a);

19.    Actual damages, according to proof at trial;

20.    The costs of suit incurred, under 15 U.S.C. § 1116;

21.    Reasonable attorneys' fees, under 15 U.S.C. § 1117(a); and

22.    Such further relief as this Court deems just and appropriate;

### As To the Fifth Claim For Relief

23.    Temporary, Preliminary and Permanent Injunctive Relief, prohibiting Defendants from: (a) engaging in any false advertising related to the Jungle Jumps' Mark and/or the Jungle Jumps' Trade Dress; (2) advertising any products in commerce bearing any trademark or trade dress that is confusingly similar to the Jungle Jumps' Mark or the Jungle Jumps' Trade Dress; and/or (3) engaging in any advertising that is likely to confusion, mistake, deception or public misunderstanding as to the origin of Defendants' products and/or their connectedness to Jungle Jumps;

24.    A seizure order under 15 U.S.C. § 1116(d);

25.    An order impounding and destroying all infringing goods, under 15 U.S.C. § 1118;

1    26.    Restitution and Disgorgement of any profits Defendants generated

2    through the sales of their infringing goods;

3    27.    Treble damages under 15 U.S.C. § 1117(a);

4    28.    Actual damages, according to proof at trial;

5    29.    The costs of suit incurred, under 15 U.S.C. § 1116;

6    30.    Reasonable attorneys' fees, under 15 U.S.C. § 1117(a); and

7    31.    Such further relief as this Court deems just and appropriate;

8    **As To The Sixth Claim For Relief**

9    32.    Temporary, Preliminary and Permanent Injunctive Relief, prohibiting

10    Defendants from: (a) using the Jungle Jumps' Mark or the Jungle Jumps' Trade

11    Dress in commerce; (2) using any other mark or trade dress in commerce that is

12    confusingly similar to the Jungle Jumps' Mark or the Jungle Jumps' Trade Dress;

13    or (3) engaging in any conduct that is likely to confusion, mistake, deception or

14    public misunderstanding as to the origin of Defendants' products and/or their

15    connectedness to Jungle Jumps;

16    33.    General damages as permitted by law and in an amount to be proven

17    at trial;

18    34.    Special damages, according to proof;

19    35.    The imposition of a constructive trust requiring that any profits or

20    gains realized through the Defendants' Unfair Business Practices be held in

21    constructive trust for the sole and exclusive benefit of Jungle Jumps;

22    36.    The costs of suit incurred; and

23    37.    Such further relief as this Court deems just and appropriate.

24    ///

25    ///

26    ///

27    ///

28    ///

-17-

1

# **DEMAND FOR JURY TRIAL**

2  Jungle Jumps hereby demands a trial by jury.

3

4  Dated:  September 29, 2009            EZRA BRUTZKUS GUBNER LLP

5

6

7  By: _____
                                      TODD LANDER
8                                     TALIN KESHISHIAN
                                Attorneys for, Plaintiff, Twinpeak
9                               Industries dba Jungle Jumps

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Captain Bounce, Inc.

707B Arroyo
San Fernando, CA 91340
877.393.3638

# Purchase Order

| Date | P.O. No. |
|------|----------|
| 5/7/2009 | 11254 |

| Vendor |
|--------|
| JUNGLE JUMPS, INC.<br>12350 MONTAGUE ST. #H<br>PACOIMA, CA 91331 |

| Ship To |
|---------|
| Captain Bounce, Inc.<br>707B Arroyo<br>San Fernando, CA 91340<br>877.393.3638 |

| Item | Description | Qty | Rate | Amount |
|------|-------------|-----|------|--------|
| 1194-15 | PALM JUMP 15X15 | 1 | 925.00 | 925.00 |
| 1180-15 | CASTLE PINK AND PURPLE II 15X15 | 1 | 925.00 | 925.00 |
| 1028-15 | MODULE YELLOW 15X15 | 1 | 925.00 | 925.00 |
| 1028-15 | MODULE YELLOW 15X15 | 1 | 925.00 | 925.00 |
| 1082-15 | MODULE BLUE 15X15 (YELLOW COLOR FRONT SIDE AND BACK PANEL. LEAVE THE POSTS BLUE COLOR)  PLEASE CALL SEVAG FOR CUSTOM COLORS ON THIS UNIT!!!<br><br>PLEASE VISIT WWW.CAPTAINBOUNCE.COM FOR DETAILS ON UNIT.<br><br>NO BLOWERS PLEASE. | 1 | 925.00 | 925.00 |

| | **Total** | $4,625.00 |
|---|-----------|-----------|

**EXHIBIT 1**

Captain Bounce, Inc.

707B Arroyo
San Fernando, CA 91340
877.393.3638

# Purchase Order

| Date | P.O. No. |
|------|----------|
| 5/11/2009 | 11257 |

| Vendor |
|--------|
| JUNGLE JUMPS, INC.<br>12350 MONTAGUE ST. #H<br>PACOIMA, CA 91331 |

| Ship To |
|---------|
| Captain Bounce, Inc.<br>707B Arroyo<br>San Fernando, CA 91340<br>877.393.3638 |

| Item | Description | Qty | Rate | Amount |
|------|-------------|-----|------|--------|
| 1075-13 | SPORTS ARENA 13X13 | 1 | 825.00 | 825.00 |
| 1032-13 | REGULAR CASTLE 13X13 | 1 | 825.00 | 825.00 |
| 1056-13 | SPORTS ARENA III 13X13 | 1 | 825.00 | 825.00 |
| 1054-13 | CASTLE PINK 13X13 | 1 | 825.00 | 825.00 |
| | NO BLOWERS PLEASE | | | |
| | PLEASE VISIT WWW.CAPTAINBOUNCE.COM FOR DETAILS OF JUMPERS!!! | | | |
| | ALSO LOOK UP PRODUCT NUMBERS TO SEE COLORS AND DESIGN!!! | | | |

**Total**      $3,300.00

Captain Bounce, Inc.

707B Arroyo
San Fernando, CA 91340
877.393.3638

# Purchase Order

| Date | P.O. No. |
|------|----------|
| 5/27/2009 | 11274 |

| Vendor |
|--------|
| JUNGLE JUMPS, INC.<br>12350 MONTAGUE ST. #H<br>PACOIMA, CA 91331 |

| Ship To |
|---------|
| Captain Bounce, Inc.<br>707B Arroyo<br>San Fernando, CA 91340<br>877.393.3638 |

| Item | Description | Qty | Rate | Amount |
|------|-------------|-----|------|--------|
| 1184-13 | CASTLE REGULAR 13X13<br><br>no blowers please | 1 | 825.00 | 825.00 |

| | Total |
|--|-------|
| | $825.00 |

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

### NOTICE OF ASSIGNMENT TO UNITED STATES MAGISTRATE JUDGE FOR DISCOVERY

This case has been assigned to District Judge A. Howard Matz and the assigned discovery Magistrate Judge is Suzanne H. Segal.

The case number on all documents filed with the Court should read as follows:

## CV09- 7085 AHM (SSx)

Pursuant to General Order 05-07 of the United States District Court for the Central District of California, the Magistrate Judge has been designated to hear discovery related motions.

All discovery related motions should be noticed on the calendar of the Magistrate Judge

---

**NOTICE TO COUNSEL**

*A copy of this notice must be served with the summons and complaint on all defendants (if a removal action is filed, a copy of this notice must be served on all plaintiffs).*

Subsequent documents must be filed at the following location:

| | | |
|---|---|---|
| **[X] Western Division**<br>312 N. Spring St., Rm. G–8<br>Los Angeles, CA 90012 | **[ ] Southern Division**<br>411 West Fourth St., Rm. 1-053<br>Santa Ana, CA 92701-4516 | **[ ] Eastern Division**<br>3470 Twelfth St., Rm. 134<br>Riverside, CA 92501 |

Failure to file at the proper location will result in your documents being returned to you.

---

Todd M. Lander - Bar No. 1730
Talin Keshishian - Bar No. 201830
EZRA BRUTZKUS GUBNER LLP
21650 Oxnard Street, Suite 500
Woodland Hills, CA 91367
Telephone: (818) 827-9000
Facsimile: (818) 827-9099

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| TWINPEAK INDUSTRIES, INC. dba JUNGLE JUMPS, <br><br> PLAINTIFF(S) <br><br> V. <br><br> CAPTAIN BOUNCE, INC.; and STEVE MEKERI, an individual, <br><br> DEFENDANT(S). | CASE NUMBER <br><br> **CV09-7085 AHM (SSx)** <br><br><br> **SUMMONS** |

TO:   DEFENDANT(S): CAPTAIN BOUNCE, INC. and STEVE MEKERI

A lawsuit has been filed against you.

Within 20 days after service of this summons on you (not counting the day you received it), you must serve on the plaintiff an answer to the attached x complaint _____ amended complaint counterclaim cross-claim or a motion under Rule 12 of the Federal Rules of Civil Procedure. The answer or motion must be served on the plaintiff's attorney, Talin Keshishian , whose address is Ezra Brutzkus Gubner LLP, 21650 Oxnard Street, Ste 500, Woodland Hills, CA 91367 . If you fail to do so, judgment by default will be entered against you for the relief demanded in the complaint. You also must file your answer or motion with the court.

Clerk, U.S. District Court

Dated:   2 9 SEP 2009

By: _____

Deputy Clerk

*(Seal of the Court)*

*[Use 60 days if the defendant is the United States or a United States agency, or is an officer or employee of the United States. Allowed 60 days by Rule 12(a)(3)].*

CV-01A (12/07)                                              **SUMMONS**                                              CCD-1A

# ORIGINAL

UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA
CIVIL COVER SHEET

| I (a) PLAINTIFFS (Check box if you are representing yourself ☐) | DEFENDANTS |
|---|---|
| TWINPEAK INDUSTRIES, INC dba JUNGLE JUMPS | CAPTAIN BOUNCE, INC , and STEVE MEKERJ, an individual |

| (b) Attorneys (Firm Name, Address and Telephone Number If you are representing yourself, provide same ) | Attorneys (If Known) |
|---|---|
| TALIN KESHISHIAN, ESQ. EZRA BRUTZKUS GUBNER LLP 21650 Oxnard Street, Suite 500 Woodland Hills, CA 91367  Tel (818) 827-9000 | Unknown |

**II. BASIS OF JURISDICTION** (Place an X in one box only )

☐ 1 U S Government Plaintiff
☑ 3 Federal Question (U S Government Not a Party)
☐ 2 U S Government Defendant
☐ 4 Diversity (Indicate Citizenship of Parties in Item III)

**III. CITIZENSHIP OF PRINCIPAL PARTIES** - For Diversity Cases Only
(Place an X in one box for plaintiff and one for defendant )

|  | PTF | DEF |  | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☑ 1 | Incorporated or Principal Place of Business in this State | ☑ 4 | ☑ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business in Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

**IV. ORIGIN** (Place an X in one box only )

☑ 1 Original Proceeding
☐ 2 Removed from State Court
☐ 3 Remanded from Appellate Court
☐ 4 Reinstated or Reopened
☐ 5 Transferred from another district (specify)
☐ 6 Multi-District Litigation
☐ 7 Appeal to District Judge from Magistrate Judge

**V. REQUESTED IN COMPLAINT.    JURY DEMAND:** ☑ Yes  ☐ No (Check 'Yes' only if demanded in complaint )

**CLASS ACTION under F.R.C.P. 23:** ☐ Yes  ☑ No    ☑ **MONEY DEMANDED IN COMPLAINT: $** To Be Determined

**VI. CAUSE OF ACTION** (Cite the U S Civil Statute under which you are filing and write a brief statement of cause. Do not cite jurisdictional statutes unless diversity )
BREACH OF WRITTEN CONTRACT, BREACH OF IMPLIED LICENSING AGREEMENT, FALSE DESIGNATION OF ORIGIN; TRADE DRESS INFRINGEMENT

**VII. NATURE OF SUIT** (Place an X in one box only )

| OTHER STATUTES | CONTRACT | TORTS PERSONAL INJURY | TORTS PERSONAL PROPERTY | PRISONER PETITIONS | LABOR |
|---|---|---|---|---|---|
| ☐ 400 State Reapportionment | ☐ 110 Insurance | ☐ 310 Airplane | ☐ 370 Other Fraud | ☐ 510 Motions to Vacate Sentence Habeas Corpus | ☐ 710 Fair Labor Standards Act |
| ☐ 410 Antitrust | ☐ 120 Marine | ☐ 315 Airplane Product Liability | ☐ 371 Truth in Lending | | ☐ 720 Labor/Mgmt Relations |
| ☐ 430 Banks and Banking | ☐ 130 Miller Act | ☐ 320 Assault, Libel & Slander | ☐ 380 Other Personal Property Damage | ☐ 530 General | ☐ 730 Labor/Mgmt Reporting & Disclosure Act |
| ☐ 450 Commerce/ICC Rates/etc | ☐ 140 Negotiable Instrument | ☐ 330 Fed Employers' Liability | ☐ 385 Property Damage Product Liability | ☐ 535 Death Penalty | |
| ☐ 460 Deportation | ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 340 Marine | **BANKRUPTCY** | ☐ 540 Mandamus/ Other | ☐ 740 Railway Labor Act |
| ☐ 470 Racketeer Influenced and Corrupt Organizations | ☐ 151 Medicare Act | ☐ 345 Marine Product Liability | ☐ 422 Appeal 28 USC 158 | ☐ 550 Civil Rights | ☐ 790 Other Labor Litigation |
| ☐ 480 Consumer Credit | ☐ 152 Recovery of Defaulted Student Loan (Excl Veterans) | ☐ 350 Motor Vehicle | ☐ 423 Withdrawal 28 USC 157 | ☐ 555 Prison Condition | ☐ 791 Empl Ret Inc. Security Act |
| ☐ 490 Cable/Sat TV | | ☐ 355 Motor Vehicle Product Liability | **CIVIL RIGHTS** | **FORFEITURE / PENALTY** | **PROPERTY RIGHTS** |
| ☐ 810 Selective Service | ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 360 Other Personal Injury | ☐ 441 Voting | ☐ 610 Agriculture | ☐ 820 Copyrights |
| ☐ 850 Securities/Commodities/ Exchange | ☐ 160 Stockholders' Suits | ☐ 362 Personal Injury-Med Malpractice | ☐ 442 Employment | ☐ 620 Other Food & Drug | ☐ 830 Patent |
| ☐ 875 Customer Challenge 12 USC 3410 | ☐ 190 Other Contract | ☐ 365 Personal Injury-Product Liability | ☐ 443 Housing/Acco-mmodations | ☐ 625 Drug Related Seizure of Property 21 USC 881 | ☐ 840 Trademark |
| ☑ 890 Other Statutory Actions | ☐ 195 Contract Product Liability | ☐ 368 Asbestos Personal Injury Product Liability | ☐ 444 Welfare | | **SOCIAL SECURITY** |
| ☐ 891 Agricultural Act | ☐ 196 Franchise | | ☐ 445 American with Disabilities - Employment | ☐ 630 Liquor Laws | ☐ 861 HIA (1395ff) |
| ☐ 892 Economic Stabilization Act | **REAL PROPERTY** | **IMMIGRATION** | | ☐ 640 R.R. & Truck | ☐ 862 Black Lung (923) |
| ☐ 893 Environmental Matters | ☐ 210 Land Condemnation | ☐ 462 Naturalization Application | ☐ 446 American with Disabilities - Other | ☐ 650 Airline Regs | ☐ 863 DIWC/DIWW (405(g)) |
| ☐ 894 Energy Allocation Act | ☐ 220 Foreclosure | ☐ 463 Habeas Corpus-Alien Detainee | ☐ 440 Other Civil Rights | ☐ 660 Occupational Safety /Health | ☐ 864 SSID Title XVI |
| ☐ 895 Freedom of Info Act | ☐ 230 Rent Lease & Ejectment | ☐ 465 Other Immigration Actions | | ☐ 690 Other | ☐ 865 RSI (405(g)) |
| ☐ 900 Appeal of Fee Determ-ination Under Equal Access to Justice | ☐ 240 Torts to Land | | | | **FEDERAL TAX SUITS** |
| ☐ 950 Constitutionality of State Statutes | ☐ 245 Tort Product Liability | | | | ☐ 870 Taxes (U S Plaintiff or Defendant) |
| | ☐ 290 All Other Real Property | | | | ☐ 871 IRS-Third Party 26 USC 7609 |

CV09-7085

**FOR OFFICE USE ONLY:**    Case Number _____

AFTER COMPLETING THE FRONT SIDE OF FORM CV-71, COMPLETE THE INFORMATION REQUESTED BELOW.

## UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA
### CIVIL COVER SHEET

**VIII(a). IDENTICAL CASES:** Has this action been previously filed in this court and dismissed, remanded or closed? ☑ No  ☐ Yes
If yes, list case number(s) _____

**VIII(b). RELATED CASES:** Have any cases been previously filed in this court that are related to the present case? ☑ No  ☐ Yes
If yes, list case number(s) _____

Civil cases are deemed related if a previously filed case and the present case:
(Check all boxes that apply)  ☐ A  Arise from the same or closely related transactions, happenings, or events, or
☐ B.  Call for determination of the same or substantially related or similar questions of law and fact; or
☐ C  For other reasons would entail substantial duplication of labor if heard by different judges; or
☐ D  Involve the same patent, trademark or copyright, and one of the factors identified above in a, b or c also is present.

**IX. VENUE:** (When completing the following information, use an additional sheet if necessary )

(a)  List the County in this District; California County outside of this District; State if other than California, or Foreign Country, in which EACH named plaintiff resides.
☐  Check here if the government, its agencies or employees is a named plaintiff  If this box is checked, go to item (b)

| County in this District * | California County outside of this District; State, if other than California, or Foreign Country |
|---|---|
| LOS ANGELES | |

(b)  List the County in this District; California County outside of this District; State if other than California, or Foreign Country, in which EACH named defendant resides.
☐  Check here if the government, its agencies or employees is a named defendant  If this box is checked, go to item (c)

| County in this District * | California County outside of this District; State, if other than California, or Foreign Country |
|---|---|
| LOS ANGELES | |

(c)  List the County in this District; California County outside of this District; State if other than California, or Foreign Country, in which EACH claim arose.
**Note: In land condemnation cases, use the location of the tract of land involved.**

| County in this District * | California County outside of this District; State, if other than California, or Foreign Country |
|---|---|
| LOS ANGELES | |

* Los Angeles, Orange, San Bernardino, Riverside, Ventura, Santa Barbara, or San Luis Obispo Counties
Note  In land condemnation cases, use the location of the tract of land involved

X  SIGNATURE OF ATTORNEY (OR PRO PER)  _TALIN KESHISHIAN_____  Date _September 29, 2009__

**Notice to Counsel/Parties:**  The CV-71 (JS-44) Civil Cover Sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law  This form, approved by the Judicial Conference of the United States in September 1974, is required pursuant to Local Rule 3-1 is not filed but is used by the Clerk of the Court for the purpose of statistics, venue and initiating the civil docket sheet  (For more detailed instructions, see separate instructions sheet.)

Key to Statistical codes relating to Social Security Cases

| Nature of Suit Code | Abbreviation | Substantive Statement of Cause of Action |
|---|---|---|
| 861 | HIA | All claims for health insurance benefits (Medicare) under Title 18, Part A, of the Social Security Act, as amended  Also, include claims by hospitals, skilled nursing facilities, etc , for certification as providers of services under the program. (42 U S C  1935FF(b)) |
| 862 | BL | All claims for "Black Lung" benefits under Title 4, Part B, of the Federal Coal Mine Health and Safety Act of 1969 (30 U S C  923) |
| 863 | DIWC | All claims filed by insured workers for disability insurance benefits under Title 2 of the Social Security Act, as amended, plus all claims filed for child's insurance benefits based on disability.  (42 U.S.C  405(g)) |
| 863 | DIWW | All claims filed for widows or widowers insurance benefits based on disability under Title 2 of the Social Security Act, as amended  (42 U S.C  405(g)) |
| 864 | SSID | All claims for supplemental security income payments based upon disability filed under  Title 16 of the Social Security Act, as amended |
| 865 | RSI | All claims for retirement (old age) and survivors benefits under Title 2 of the Social Security Act, as amended  (42 U S C  (g)) |